UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

HUSSAM HARIRI,

                          Plaintiff,                          Case No.:

    - against –

HSBC USA, INC.,                                     **VERIFIED COMPLAINT**

                       Defendant.                     **DEMAND FOR JURY TRIAL**

-----------------------------------------------------------------------x

Mr. Hussam Hariri, by his attorneys, White, Nisar & Hilferty, LLP, alleges upon knowledge to himself and upon information and belief as to all other matters as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Hussam Hariri ("Mr. Hariri"), a male Vice President and Senior Product Manager with a strong performance record, files this complaint alleging that Defendant ("HSBC") discriminated against him and unlawfully terminated his employment based upon his gender. Mr. Hariri diligently performed his job duties for Defendant over the course of 26 months, only to receive disparate treatment in his employment opportunities. Mr. Hariri now requests this Court enforce his civil rights as protected by federal, state, and local law.

2. Plaintiff brings this action pursuant Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000 *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.*, and the New York City Human Rights Law, N.Y. Admin Code 8-101, *et seq.* against Defendant.

## JURISDICTION & VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's Civil Rights under Title VII and the other aforementioned federal statutes. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PROCEDURAL REQUIREMENTS

5. Mr. Hariri complied with all statutory prerequisites to filing this action.

6. On May 16, 2017, Mr. Hariri filed a Verified Complaint with New York State Division of Human Rights ("NYSDHR") charging Defendant with unlawful discriminatory employment practices.

7. On December 28, 2017, the Equal Employment Opportunity Commission ("EEOC") issued Mr. Hariri a notice of right to file suit in federal court for allegations of unlawful discrimination on the basis of gender discrimination as set forth in the Complaint.

8. Mr. Hariri filed this action within 90 days of receipt of the EEOC's decision.

9. Mr. Hariri met any and all other prerequisites to the filing of this suit.

## THE PARTIES

10. Plaintiff Hussam Hariri is a male residing in Bronx, New York. Defendant employed Mr. Hariri from January 5, 2015 through March 15, 2017.

11. Defendant is the American subsidiary of HSBC Holdings PLC, a British multinational banking and financial services institution. (include domicile)

## FACTUAL ALLEGATIONS

12.     Defendant hired Mr. Hariri on January 5, 2015 as a Vice President and Senior Product Manager in Defendant's Commercial Banking Division.

13.     As set forth in greater detail below, Mr. Hariri experienced a plethora of discrimination and harassment based on his gender during his employment with Defendant. Despite his strong performance and positive feedback, Defendant accused Mr. Hariri of sexual harassment and inappropriate conduct with female colleagues, causing him to be disciplined more-harshly and treated less-favorably than female employees. Defendant subjected Mr. Hariri to unwarranted accusations and questioning, prohibited him from speaking to colleagues, and required him to work from home pending investigation, despite being the strongest employee on his team. Defendant unlawfully terminated Mr. Hariri, without evidence of wrongdoing, based upon gender discrimination, which stemmed from a false accusation of sexual harassment made by a female colleague Yin-Yin (Yvonne) Tsu.

14.     Defendant assigned Mr. Hariri to a team in the Commercial Banking Division, that included Senior Vice President Amy Mauer-Litos, Holly Robertson, Yin-Yin (Yvonne) Tsu, and Hakan Ince. At all relevant times, Mauer-Litos acted as Mr. Hariri's direct supervisor.

15.     As a Senior Product Manager Mr. Hariri took a leadership role among his team on all assigned tasks and projects.

16.     Throughout Mr. Hariri's employment, Mauer-Litos regularly sought his opinion and judgment regarding ongoing projects and relied on him to ensure that other team members timely completed their assignments. Further, Mauer-Litos often designated Mr. Hariri as Officer in Charge whenever she was out of the office.

17. During Mr. Hariri's 26 months of employment, he received strong year-end performance reviews. Specifically, Mauer-Litos characterized Mr. Hariri as knowledgeable, reliable, professional, and as having excellent people skills.

18. On multiple occasions, Mauer-Litos informed Mr. Hariri that other employees outside of their team spoke highly of his work ethic and performance.

19. Defendant granted Mr. Hariri significant raises and bonuses due to his strong performance.

20. On February 8, 2017, Human Resources representative Maria Malanga requested to meet with Mr. Hariri to discuss a confidential investigation, to which he immediately complied. Before providing substantive detail about the subject matter of the investigation, Malanga accusatorily stated that Mr. Hariri must answer her questions honestly because she already knew the answers to those questions. This accusation disturbed Mr. Hariri, who remained unaware of the subject of the investigation. Accordingly, Mr. Hariri expressed his concern that Defendant had already determined the outcome of the investigation.

21. Malanga asked Mr. Hariri whether he asked any of his colleagues to go on a date *via* the smartphone messaging application, WhatsApp. Mr. Hariri denied such conduct, but acknowledged that he occasionally spoke with colleagues through the app. Malanga then produced an excerpt of a WhatsApp conversation between Mr. Hariri and his colleague, Yin-Yin (Yvonne) Tsui, an employee in Defendant's Commercial Banking Division. Mr. Hariri recognized the conversation but remained confused as to why Defendant subjected him to an investigation because Tsui initiated the relevant part of the conversation when she wrote, "Hi sexy." Immediately after Mr. Hariri received this message, he reported it to Mauer-Litos and Defendant's Human Resources Department.

22. Despite Tsui falsely accusing Mr. Hariri of sexual harassment, Tsui herself acted unprofessionally and inappropriately towards Mr. Hariri on multiple occasions. Mr. Hariri always politely ignored and rejected Tsui's advances and never initiated the incidents Defendant accused him of.

23. In the Summer of 2016, Tsui initiated conversations with Mr. Hariri regarding her upcoming marriage and her hesitations about it. Soon before Tsui's wedding, Tsui again initiated a conversation with Mr. Hariri regarding her hesitations about the marriage. During this conversation, she became emotional and hugged Mr. Hariri.

24. In September 2016, Tsui complained to Mr. Hariri about her husband and inquired about divorce law in United States.

25. On other occasions, Tsui casually disclosed details about her relationship with her husband to Mr. Hariri. Specifically, Tsui inappropriately mentioned that her significant other enjoyed Japanese porn. In addition, Tsui often sought Mr. Hariri's advice because she wanted to understand from a male perspective.

26. On multiple occasions during 2016 and 2017, Tsui made unsolicited comments to Mr. Hariri about her menstrual cycle. Mr. Hariri complained to Mauer-Litos about Tsui's unprofessional and inappropriate behavior.

27. In May 2016, Tsui asked Mr. Hariri if his son was circumcised. During the same time, Tsui stated to Mr. Hariri that her current husband was "an asshole," and that Mr. Hariri remains her first choice as a husband.

28. Tsui often invaded Mr. Hariri's personal space, which made him uncomfortable. Mr. Hariri respectfully requested that she cease such behavior, however, she ignored his request.

29. On January 20, 2017, Mr. Hariri's birthday, Tsui inappropriately commented that perhaps his wife might "give him something special" that night. This comment made Mr. Hariri uncomfortable.

30. Subsequently, Mr. Hariri complained to Defendant about Tsui's inappropriate behavior on multiple occasions. Defendant failed to reprimand Tsui for her actions and excused her behavior on the pretextual basis that she lacked the ability to understand that her actions were inappropriate due to her culture. Defendant failed to reprimand Tsui, despite Mr. Hariri's complaints.

31. Following Mr. Hariri's meeting with Malanga, he expressed his frustrations to Mauer-Litos. Mauer-Litos acted both ignorant of and shocked by the allegations because she never witnessed Mr. Hariri engage in any misconduct.

32. During subsequent conversations in February 2017, Malanga repeatedly questioned Mr. Hariri about whether he ever asked any of his colleagues on a date, made sexual jokes or advances. Malanga did not provide any evidence to substantiate the accusations Defendant made against Mr. Hariri, who denied all allegations.

33. Defendant launched an investigation into Tsui's accusations against Mr. Hariri.

34. In mid-February 2017, Malanga informed Mr. Hariri that he must work from home for the remainder of the investigation. She also prohibited him from returning to his desk to collect his belongings and from speaking to any members on his team except Mauer-Litos. Defendant's failure to substantiate the allegations against him and subsequent discipline embarrassed Mr. Hariri.

35. On February 12, 2017, Mr. Hariri sent Malanga a six-page document with detailed accounts of his professional relationships at HSBC, including extensive transcripts of his

communications with colleagues (including Tsui) on HSBC's intra-office instant messaging platform. Additionally, Mr. Hariri encouraged Malanga to consult with Defendant's Information Technology Department to obtain any and all other messaging transcripts between Mr. Hariri and his colleagues, and to review them for any evidence of inappropriate conduct. Malanga failed to acknowledge Mr. Hariri's documentation.

36. Between mid-February and March 14, 2017, Mr. Hariri aptly fulfilled his employment responsibilities while adhering to Malanga's directive to refrain from contacting any members of his team.

37. On March 14, 2017, Malanga informed Mr. Hariri that he violated Defendant's Positive Work Environment Policy.

38. Subsequently, Malanga advised Mr. Hariri that his employment with Defendant would be terminated effective immediately.

39. Mr. Hariri requested specific information or any evidence of wrongdoing on his behalf. Malanga repeated that Mr. Hariri violated the Defendant's policy by sexually harassing a colleague, but declined to provide any evidence whatsoever of his alleged misconduct.

40. In addition, Malanga stated that she had no doubt that Mr. Hariri communicated unprofessionally with his colleagues, and that it was a business decision to terminate his employment due to his inappropriate behavior. Again, Malanga did not provide any evidence to support the alleged misconduct.

41. Upon information and belief, Defendant terminated Mr. Hariri due to his gender, and utilized the false accusation of sexual harassment as a basis to conceal its discriminatory animus against him.

42. Defendant treated Mr. Hariri differently as compared to similarly-situated female employees. Specifically, Defendant terminated his employment based on unsubstantiated claims of sexual harassment made by a female comparator who behaved inappropriately towards Mr. Hariri. Defendant ignored Mr. Hariri's complaints and excused his female colleague's behavior. However, Defendant disciplined and terminated Mr. Hariri for purported similar actions. As such, Defendant discriminated against Mr. Hariri in the terms, conditions, and privileges of his employment because of his gender.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (DISCRIMINATION IN VIOLATION OF 42 U.S.C. §2000)

43. Mr. Hariri repeats and realleges every paragraph above, as if fully set forth herein.

44. Mr. Hariri is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

45. Mr. Hariri possessed proper qualifications for Defendant to continue his employment.

46. Defendant's unsubstantiated accusations of sexual harassment against Mr. Hariri adversely affected his employment.

47. The circumstances previously herein set forth give rise to the inference of gender discrimination by Defendant.

48. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 §703(a), Mr. Hariri suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence,

emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT
## (DISCRIMINATION IN VIOLATION OF N.Y. EXEC. LAW § 296)

49. Mr. Hariri repeats and realleges every paragraph above, as if fully set forth herein.

50. Mr. Hariri is a member of a protected class pursuant to New York Executive Law § 296.

51. Mr. Hariri possessed proper qualifications for Defendant to continue his employment.

52. Defendant's unsubstantiated accusations of sexual harassment against Mr. Hariri adversely affected his employment.

53. The circumstances previously herein set forth give rise to the inference of gender discrimination.

54. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y. Exec. Law §296, Mr. Hariri suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## THIRD CAUSE OF ACTION AGAINST DEFENDANT
## (DISCRIMINATION IN VIOLATION OF N.Y.C. ADMIN. CODE §8-107)

55. Mr. Hariri repeats and realleges every paragraph above, as if fully set forth herein.

56. Mr. Hariri is a member of a protected class pursuant to New York City Administrative Code § 8-107.

57. Mr. Hariri possessed proper qualifications for Defendant to continue his employment.

58. Defendant's unsubstantiated accusations of sexual harassment against Mr. Hariri adversely affected his employment.

59. The circumstances previously herein set forth give rise to the inference of gender discrimination.

60. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of N.Y.C. Admin. Code §8-107, Mr. Hariri suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Mr. Hariri prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A. A declaratory judgment that actions, conduct, and practices of Defendant complained of herein violate the laws of the United States and the State and City of New York;

B. An award of damages in the amount to be determined at trial, plus prejudgment interest, to compensate Mr. Hariri for all monetary and/or economic harm;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mr. Hariri for all non-monetary and/or compensatory harm, including but not limited to, compensation for mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

D. An award of damages for any and all other monetary/non-monetary losses suffered by Mr. Hariri in an amount to be determined at trial, plus prejudgment interest;

E.   An award of punitive damages;

F.   An award of costs that Mr. Hariri incurred in this action, as well as Mr. Hariri's reasonable attorneys' fees to the fullest extent permitted by law; and

G.   Such other and further relief as the Court may deem just and proper.

Dated: March 27, 2018
       New York, New York

                                        Respectfully submitted,

                                        /s/ Nina A. Ovrutsky

                                        Nina A. Ovrutsky
                                        (NO6911)
                                        White, Nisar & Hilferty, LLP
                                        *Attorneys for Plaintiff*
                                        *Hussam Hariri*
                                        570 Lexington Avenue, 16th Floor
                                        New York, New York 10022
                                        (646) 690-8881

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

HUSSAM HARIRI,

                      Plaintiff,                          Case No.:

      - against –

HSBC USA, INC.,                                    **VERIFICATION**

                      Defendant.

-------------------------------------------------------------------x

    Pursuant to 28 USC 1746, I verify under penalty of perjury that the foregoing Complaint is true and correct.

Executed on March 14, 2018

Comm. Expires: 02/09/19

[Notary seal: VINCENT WHITE, NOTARY, NO. 02WH6208286, QUALIFIED IN BROOME COUNTY, STATE OF NEW YORK, PUBLIC]

_____
Hussam Hariri